**Richard D. MILLER and Mary L. Miller, individually and as surviving parents of Jar'red Miller, Plaintiffs–Appellants,**

v.

**David N. CAMPBELL, M.D., Defendant–Appellee.**

No. 97CA0166.

Colorado Court of Appeals, Div. IV.

April 16, 1998.

Rehearing Denied July 2, 1998.

Certiorari Denied Feb. 16, 1999.

P. Randolph Nicholson, P.C., P. Randolph Nicholson, Schoenwald, Sanger & Kudla, L.L.C., Susan L. Sanger, Denver, for Plaintiffs–Appellants.

Long & Jaudon, P.C., Alan D. Avery, James M. Miletich, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge NEY.

In this medical malpractice action, plaintiffs, Richard Dean and Mary Lou Miller, individually, and as surviving parents of the decedent, Jar'red Miller, appeal from the trial court's order dismissal their complaint against defendant, David N. Campbell, M.D., on the basis that it was barred by governmental immunity. We vacate the dismissal and remand with directions.

On September 20, 1994, the decedent, who was then nine years old, underwent surgery performed by defendant to replace a dysfunctional artificial heart valve that had been inserted when he was two years old. The decedent's condition steadily worsened after the surgery and he died on October 6.

Plaintiffs consented to an autopsy which was performed the next day. They were told that an autopsy report would be completed in approximately six weeks. Following the granting of consent, plaintiffs were not contacted by either the decedent's doctors or the doctor who performed the autopsy.

In the summer of 1995, plaintiffs called the hospital to obtain a copy of the autopsy report. They were told to make a written request, which they sent to the hospital on August 21, 1995. They received a copy of the autopsy report on September 5, 1995.

In early November 1995, plaintiffs gave the autopsy report to a family friend who was a registered nurse. On November 10, 1995, the nurse explained to plaintiffs that the autopsy report indicated that a major artery supplying blood to the decedent's heart had been sutured shut during the surgery, which resulted in his death.

Shortly thereafter, plaintiffs retained counsel and, on February 27, 1996, 175 days after they had received the autopsy report, they sent a notice of claim pursuant to § 24–10–109, C.R.S.1997, of the Colorado Governmental Immunity Act (GIA) to the Colorado Attorney General and the University of Colorado Health Science Center where defendant was employed.

Plaintiffs then filed this action against defendant asserting that he had been negligent in performing the surgery. Defendant moved to dismiss under the GIA on the basis that plaintiffs had failed to provide a timely notice of claim.

The trial court granted defendant's motion without explanation or findings, summarily concluding that the action was barred by the GIA.

On appeal, plaintiffs contend that the notice of claim was timely. Inasmuch as we are unable to determine the basis for the trial court's ruling, we conclude that additional findings are required.

Section 24–10–109(1), C.R.S.1997, requires that the injured person:

file a written notice as provided in this section *within one hundred eighty days after the date of the discovery of the injury,* regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. (emphasis added)

Compliance with the 180–day requirement is "a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action." Section 24–10–109(1); *Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996); *see also* § 24–10–118(1)(a), C.R.S.1997 (compliance with § 24–

10–109 in the forms and within the times provided therein shall be a jurisdictional prerequisite to an action against a public employee).

■ Whether a plaintiff has given timely notice under the GIA is to be determined by the trial court as factfinder under C.R.C.P. 12(b)(1). Appellate review of the trial court's factual determinations is conducted under the highly deferential, clearly erroneous standard. *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993); *Armstead v. Memorial Hospital,* 892 P.2d 450 (Colo.App.1995). The trial court's order, however, "must be sufficiently particularized to permit informed review by the court of appeals." *City of Lakewood v. Brace,* 919 P.2d 231, 244 (Colo.1996).

■ Determination of when a claimant "discovers" he or she has been injured for purposes of the GIA generally involves a question of fact. The GIA's "notice period places a burden on the injured party to determine the cause of the injury, to ascertain whether a governmental entity or public employee is the cause, and to notify the governmental entity within 180 days from the time when the injury is discovered." *Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra; see also Grossman v. City & County of Denver,* 878 P.2d 125 (Colo.App. 1994) (proper inquiry under the GIA is whether sufficient evidence exists to cause a reasonable person to know that he or she has been injured by the tortious conduct of another).

■ A claimant who relies on a physician's diagnosis should not be compelled to file suit before he or she is aware of the physician's wrongful conduct. *See Smith v. Winter,* 934 P.2d 885 (Colo.App.1997).

■ Here, because the trial court did not make any factual determinations in dismissing plaintiff's complaint for lack of subject matter jurisdiction under the GIA, there has not been any determination as to when plaintiffs discovered or should have discovered that they had been injured for purposes of the running of the 180–day notice period.

■ *Trinity Broadcasting* established that the start of the notice period for injuries begins when an injury and *its cause* are discovered. *Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra.* Defendant argues that the trigger for the notice period established by *Trinity* does not apply in cases of death. Rather, he asserts that the notice period begins at the time of death, with no regard for the time of discovery that the cause may have been the tortious conduct of another. We conclude that the trigger for the 180 days in cases of death is the same as in all injuries. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra.*

Plaintiffs asserted in their affidavits that they had relied on defendant's assurances that the surgery had gone satisfactorily and that decedent's death resulted from complications following the surgery. Thus, reasonable persons in plaintiffs' position may not have known at the time of death that decedent's death was possibly caused by the tortious conduct of another. Therefore, under the circumstances presented here, we conclude that questions of fact remain concerning when plaintiffs discovered or, through the exercise of reasonable diligence, should have discovered the alleged wrongful act by defendant. Accordingly, because this issue must be resolved by the trial court as factfinder, we conclude that the action must be remanded for entry of the necessary findings. *See City of Lakewood v. Brace, supra.*

In making these findings, the trial court may conduct such further proceedings as it deems appropriate. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra.*

The judgment is reversed and the cause is remanded to the trial court with directions to conduct, as necessary, further proceedings and to make additional findings consistent with this opinion.

RULAND and VOGT, JJ., concur.